1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10  ROBERT W WOOTTON,

11                    Plaintiff,

12          v.

13  PIERCE COUNTY JAIL et al.,

14                    Defendants.

CASE NO. C12-5828 BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR:

MAY 10, 2013

15

16          The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

17  Magistrate Judge, J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. §

18  636(b)(1)(A) and (B), and Magistrate Judge Rules MJR3 and MJR4.

19          The Court recommends granting defendants' motion for summary judgment and

20  dismissing this action with prejudice. Plaintiff fails to show that any defendant was deliberately

21  indifferent to his diabetes or that any defendant violated his Fourteenth Amendment rights.

22  Plaintiff was a pretrial detainee during the time in question and his claims are properly

23  considered pursuant to the Fourteenth Amendment rather than the Eighth Amendment, but the

24  analysis is otherwise identical.

Report and Recommendation 1

1   In the alternative, the Court recommends granting defendants' motion for qualified

2   immunity because defendants show that plaintiff repeatedly refused meals and medical treatment

3   and was confrontational and violent in the medical area. Defendants reasonably could have

4   believed that their use of force was constitutional in that they were trying to provide defendant

5   treatment. Further, plaintiff fails to show harm when an officer allegedly ate a meal that had been

6   designated for plaintiff.

7                                            FACTS

8   It is undisputed that plaintiff was housed at the Peirce County Jail as a pretrial detainee

9   from December 9, 2011 until sometime in March of 2012 (ECF No. 18, Exhibit G, chronological

10  medical records). It is undisputed that plaintiff suffers from insulin dependent diabetes. It is

11  undisputed that plaintiff suffered from both hyperglycemic and hypoglycemic episodes and had

12  to be taken to the hospital on an emergency basis.

13  Plaintiff alleges that one or more defendants violated his Fourteenth Amendment rights

14  by failing to provide him a proper diet and medical treatment (ECF 5). Plaintiff also alleges that

15  Correctional Officer Sandoval violated plaintiff's Fourteenth Amendment rights by allegedly

16  eating plaintiff's meal, when plaintiff was hospitalized (ECF No. 5, page 7). Plaintiff also alleges

17  that Officer Gannon violated his Fourteenth Amendment rights when she used force to defend

18  herself against plaintiff on January 8, 2012.

19  Plaintiff was not a model prisoner.  The record shows that when deputies moved plaintiff

20  from the Puyallup Jail to the Pierce County Jail on December 9, 2011, plaintiff was already

21  noncompliant and refusing to take his medications (ECF No. 18, Exhibit B, page 2). Plaintiff

22  threatened to kill the transporting officers and their families. *Id.* Plaintiff head butted one of the

23  transport officers. *Id.* Plaintiff refused to take insulin on December 9, 2011 (ECF No. 18, Exhibit

24

Report and Recommendation 2

F, page 2). Jail Officials placed plaintiff on a close medical-watch at the time of booking (ECF No. 18, Exhibit D, page 7). Plaintiff was later sent to a living unit.

Plaintiff alleges that he ate breakfast and lunch on December 11, 2011, but there is nothing to prove he actually ate those meals (ECF No. 18, Exhibit E, pages 3 and 6). Plaintiff's blood sugar was so low on December 11, 2011, that at 3:30 p.m. jail medical personnel called 911 and sent plaintiff to the hospital (ECF No. 18, Exhibit B, page 3). Plaintiff was stabilized by 5:46 p.m. and returned to the jail later in the evening of December 11, 2011 (ECF No. 18, Exhibit E, page 7). The next day plaintiff did not follow directions from the medical staff and plaintiff was "hostile and argumentative." (ECF No. 18, Exhibit G page 4). Medical staff stated in the medical record that plaintiff was known to "manipulate his blood sugars." *Id*. Thus, only two days into his incarceration at the Jail, medical staff were questioning if plaintiff was eating the food being provided to him.

On December 19, 2011, plaintiff refused all medical care including blood sugar testing and his diabetic diet (ECF No. 18, Exhibit B, page 4).  That same day, plaintiff's blood sugar reading was 593. (ECF No. 18, Exhibit G, page 5). On December 22, 2011, plaintiff was seen by mental health staff because he was refusing medical treatment (ECF No. 18, Exhibit H, page 4). Mental health staff did not diagnose a mental issue, only a disagreement regarding medical treatment. *Id*.

On January 1, 2012, plaintiff became nonresponsive while he was in the day room of his unit. Other inmates in the day room notified custody staff that plaintiff was having trouble (ECF No. 18, Exhibit B, page 6). Jail staff declared a medical emergency and after a "quick examination," jail staff called 911. *Id*. Jail medical staff measured plaintiff's blood sugar at 45. *Id*. They attempted to give plaintiff glucose paste, but plaintiff had no gag reflex. *Id*. Plaintiff

Report and Recommendation 3

1  was transported, first to the clinic and then to the hospital (ECF No. 18, Exhibit G, page 6).

2  Paramedics measured plaintiff's blood sugar after they arrived and it had dropped to 28.

3  Paramedics administered "glucagon." Only 30 minutes went by from the time the emergency

4  was declared until plaintiff was transported to the hospital. *Id*. After this incident, P.A. Fleck

5  ordered that plaintiff consume all meals and snacks in the clinic so that staff could observe and

6  document plaintiff's food intake. (ECF No. 18, Exhibit G, page 6).

7         By January 7, 2011, plaintiff was refusing medical treatment from P.A. Fleck and a

8  female physician. He demanded to be seen only by "Dr. B." (ECF No. 18, Exhibit G, page 6).

9  "Dr. B" consulted with plaintiff, and released him to his unit, and allowed him to eat his food in

10  the unit. Plaintiff's blood sugar reading on January 7, 2012 at 10:55 p.m. was 419, which is

11  considered hyperglycemia (ECF No. 18, Exhibit G, page 7). Plaintiff was given insulin and

12  allowed to take his p.m. snack back to his unit. Plaintiff was informed that staff would re-check

13  his blood sugar in 6 hours -- at 4:00a.m. Staff stated they would check plaintiff earlier if he was

14  feeling hypoglycemic (ECF No. 18, Exhibit G, page 6).

15         At 1:16 a.m. on January 8, 2011, only 2 hours after plaintiff had been released to his unit,

16  jail staff declared a medical emergency. (ECF No. 18, Exhibit G, page 7) Jail staff found plaintiff

17  on the floor of his cell sweating and shaking. Plaintiff's blood sugar read at 40. Jail medical staff

18  gave plaintiff glucose gel, which he was able to swallow. Jail staff had already called 911. The

19  fire department arrived 12 minutes after the emergency had been declared. The fire department

20  began two I.V. lines and administered glucose (ECF No. 18, Exhibit G, page 7). An unidentified

21  inmate informed fire department personnel and jail staff that plaintiff was depressed over the loss

22  of his sister and may have tried to harm himself. *Id*.  Plaintiff's blood sugar was at 131 by 2:04

23  a.m., plaintiff was alert and responsive with normal vital signs and a regular EKG.

24

Report and Recommendation 4

1    Fire department personnel recommended that plaintiff eat and he was fed immediately.

2    Plaintiff's blood sugar was at 141 at 3:30 a.m. Medical staff fed plaintiff breakfast in the clinic.

3    Plaintiff was then placed in a holding cell. By 10:14 a.m., plaintiff's blood sugar had risen to 466

4    and P.A. Fleck ordered insulin for plaintiff. Plaintiff refused treatment and stated "I ain't taken

5    that from you bitch." "I don't deal with anyone but Dr. Balderrama." (ECF No. 18, Exhibit G,

6    page 8). Staff specifically informed plaintiff that uncontrolled blood sugar could lead to a heart

7    attack and death, but plaintiff still refused treatment. *Id*. Medical personnel called in mental

8    health providers who examined plaintiff at 3:00 p.m. (ECF No. 18, Exhibit H, page 5). Mental

9    health providers concluded that plaintiff did not have a mental health issue but that they observed

10   him to be rude, foul, and yelling at staff. *Id*. Plaintiff expressed dissatisfaction with medical

11   treatment and was refusing treatment. *Id*.

12    Medical staff attempted to check plaintiff's blood sugar level at 11:00 a.m., on January 8,

13   2012, but plaintiff refused treatment. *Id*. Plaintiff repeatedly continued to refuse any treatment

14   until 5:00 p.m. when he became physically abusive toward defendant Gannon and she had to use

15   force to restrain him (ECF No. 18, Exhibit G, page 10). Correctional staff used a taser during this

16   incident and placed him in a restraint chair. He continued to refuse medical treatment. *Id*.

17   Medical staff again contacted mental health staff and they concluded that there was not any

18   mental health issue but that plaintiff was in a power struggle with medical staff regarding his

19   treatment (ECF No. 18, Exhibit H, page 5).

20    On January 9, 2012, Dr. Balderrama stated:

21    pt unfortunately has continued with poor cooperation with staff to have better
      control of BS (blood sugar), there are concerns that the patient intentionally wants
22    to have episodes of hypoglycemia or hyperglycemia.

23

24

Report and Recommendation 5

1  (ECF No. 18, Exhibit G, page 11). Plaintiff remained noncompliant and was treated for

2  hyperglycemia for the next three days. *Id.*

3          On January 12, 2012, Dr. Balderrama changed plaintiff's diet from a diabetic diet to a

4  suicide watch diet (ECF No. 18, Exhibit G, page 12). On January 24, 2012, plaintiff agreed to be

5  more cooperative with staff regarding his treatment (ECF No. 18, Exhibit G, page 12). On

6  February 11, 2012, plaintiff was hypoglycemic with a blood sugar reading of 38. Plaintiff stated

7  that he didn't tell the custody officer because he knew he was being checked at 9:00 p.m. (ECF

8  No. 18, Exhibit G, page 13). Plaintiff was treated, fed, and kept for observation.

9          Plaintiff refused treatment again on February 26, 2012. (ECF No. 18, Exhibit G, page

10  14). The medical record shows plaintiff being belligerent and rude to medical staff (ECF No. 18,

11  Exhibit G, page 14). Plaintiff complained of hypoglycemia while in Court on March 6, 2012, and

12  he was taken to the clinic and treated (ECF No. 18, Exhibit G, page 15). On March 9, 2012,

13  correctional deputies observed plaintiff eating slowly and not responding to them. Staff brought

14  plaintiff to the clinic and treated him for hypoglycemia (ECF No. 18, Exhibit G, page 15). The

15  Court declared a mistrial on March 9, 2012 (ECF No. 18, Exhibit C, page 24).  Retrial began

16  almost immediately. One day later, on March 10, 2012, plaintiff had elevated blood sugar

17  readings. (ECF No. 18, Exhibit G, page 15).

18  <u>PROCEDURAL HISTORY</u>

19          Defendants originally asked the Court to consider a motion to dismiss (ECF No. 17).

20  Defendants had raised the defenses of failure to exhaust administrative remedies, failure to state

21  a claim, and qualified immunity (ECF No. 17). Defendants attached documents that went far

22  beyond what was needed to show failure to exhaust administrative remedies. Defendants

23  attached large portions of plaintiff's medical record (ECF No. 18). Defendants referred to these

24

Report and Recommendation 6

1  documents for issues unrelated to exhaustion of administrative remedies in their statement of

2  facts (ECF No. 17, pages 3-5). The Court converted the motion to a motion for summary

3  judgment and gave the parties the chance to submit additional briefing (ECF No. 27).

4  Defendants submitted timely additional briefing (ECF No. 28). Four days before his briefing was

5  due, plaintiff filed a motion for an extension of time (ECF No. 29). While that motion was

6  pending, plaintiff submitted his briefing in opposition to the pending motion for summary

7  judgment (ECF No. 30, and 31). The Court has considered plaintiff's late briefing.

8                           <u>STANDARD OF REVIEW</u>

9          In federal court, summary judgment is required under Fed. R. Civ. P. 56(a) if the

10  evidence, viewed in the light most favorable to the nonmoving party, shows that there is no

11  genuine issue as to any material fact. *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th

12  Cir.1997).  The moving party bears the initial burden of establishing the absence of a genuine

13  issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  That burden may

14  be met by "'showing'-- that is, pointing out to the district court -- that there is an absence of

15  evidence to support the nonmoving party's case." *Id*. at 325.  Once the moving party has met its

16  initial burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and identify

17  facts that show a genuine issue for trial.  *Id*. at 323-24; *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

18  242, 248 (1986). The moving party is entitled to judgment as a matter of law if the nonmoving

19  party fails to make a sufficient showing on an essential element of a claim on which the

20  nonmoving party has the burden of proof.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23

21  (1985); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the

22  prism of the substantive evidentiary burden"). Conclusory, nonspecific statements in affidavits

23

24

Report and Recommendation 7

1  are not sufficient; and, the court will not presume "missing facts". *Lujan v. National Wildlife*

2  *Federation*, 497 U.S. 871, 888-89 (1990).

3  <u>DISCUSSION</u>

4      A.     Failure to exhaust administrative remedies.

5      Plaintiff is required by the Prison Litigation Reform Act to exhaust whatever

6  administrative remedies are available to him prior to filing a complaint in federal court.  The

7  relevant portion of the act states:

8         No action shall be brought with respect to prison conditions under section 1983 of
          this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

9         correctional facility until such administrative remedies as are available are
          exhausted.

10 42 U.S.C. § 1997e(a).

11

12     Here, plaintiff filed this action while incarcerated and the act applies to him.  *See* 42

   U.S.C. §1997e(h).

13

14     In the Ninth Circuit a motion to dismiss for failure to exhaust is an unenumerated Fed. R.

   Civ. P. 12(b) motion. *Wyatt v. Terhune,* 315 F.3d 1108 (9th Cir. 2003). Defendants have the

15 initial burden of pleading and proving failure to exhaust. *Wyatt*, 315 F.3d at 1119.

16

17     Defendants argue that there is an information booklet given to each person booked into

18 the Jail and that one was given to plaintiff (ECF No. 18, Exhibit A). The booklet outlines the

19 prison grievance procedure and the steps a person must take to exhaust his administrative

20 remedies (ECF No. 18, Exhibit A at pages 8 and 9). Defendants' record shows that plaintiff

21 submitted Kites, but nothing shows that he ever went to the next step and filed a formal

22 grievance (ECF No. 18, Exhibit C, Kites from plaintiff). Defendants show that plaintiff did not

   exhaust his claims.

23

24

Report and Recommendation 8

1    Once defendants have met their burden of proof, the burden shifts to plaintiff to show that

2    the grievance system was unavailable or that his efforts to exhaust were hindered. *Albino v.*

3    *Baca*, 697 F.3d, 1023, 1032 (9th Cir. 2012). Plaintiff argues that he was never given the jail's

4    information booklet (ECF No. 31, ¶ 6). Thus, he alleges that he did not know how to exhaust the

5    grievance process. Plaintiff's allegation is corroborated by a February 8, 2012, "Kite" where

6    plaintiff asks for a copy of the "Prisoners' Hand Book of Pierce County." Plaintiff alleges in his

7    "Kite" that this was his third request for that material (ECF No. 18, Exhibit C). The Jail's

8    response was plaintiff should ask the cluster officer for one. There is nothing in the record to

9    show that plaintiff ever received the information on how to exhaust the grievance process.

10    Plaintiff again requested a copy of the "Prisoners' Information Handbook" on March 12,

11    2012 (ECF No. 18, Exhibit C). Again the answer was to "just ask the cluster officer." Again,

12    there is nothing in the record to show that plaintiff ever received the information on how to

13    exhaust the grievance process.

14    In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court

15    looks to the pleadings and decides disputed issues of fact. *Albino*, 697 F.3d at 1030. The Court

16    finds that plaintiff repeatedly requested information that would have included how to exhaust the

17    grievance procedure (ECF No. 18, Exhibit C Kites). The Court also finds that there is nothing in

18    the record to support defendants' assertion that plaintiff ever received this information. The

19    Court concludes that plaintiff's attempts to exhaust the grievance system were hindered by

20    failure to provide him with the needed information. Under these facts, the Court declines

21    recommending that the action be dismissed for failure to exhaust administrative remedies.

22

23

24

Report and Recommendation 9

B.      Proper parties.

Plaintiff has named as defendants Pierce County Jail, Chief Karr, Captain Spencer, Dr. Balderrama, and an unnamed "Food Manager," but has failed to identify what particular acts by these defendants allegedly violated his constitutional rights (ECF No. 5).

Pierce County Jail is not a governmental entity.  The Jail is operated by Pierce County. Since the Jail is not a separate legal entity, it is not capable of being sued.  *See* Fed. R. Civ. P. 17(b).  Furthermore, even if plaintiff had named Pierce County, a local governmental unit is not vicariously liable under §1983 unless plaintiff shows that the entity's custom or policy resulted in the alleged constitutional violation *See Monell v. New York City Department of Social Services*, 436 U.S. 658, 690 n. 55(1978). There is no evidence of a policy or custom directing the challenged conduct (ECF No. 5).  Therefore, dismissal of the Pierce County Jail is recommended.

The claims against Chief Karr and Captain Spencer should also be dismissed because plaintiff has failed to show how they caused or personally participated in causing harm to plaintiff (ECF No. 5). A defendant cannot be held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position because the theory of respondeat superior is not sufficient to state a claim under § 1983.  *Padway v. Palches*, 665 F.2d 965 (9th Cir. 1982); *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 n.58 (1978).  Therefore, these defendants should also be dismissed.

This leaves the Food Manager, Dr. Balderrama, Corrections Officer Gammon, and Corrections Officer Sandoval as the only named defendants with individual conduct that is specifically challenged in plaintiff's responsive documents (*See* ECF No. 31).

C.      Fourteenth Amendment Claims.

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees by prohibiting the State from punishing them.  *See Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979).

Report and Recommendation 10

The Ninth Circuit protects a pretrial detainee's claims using the same analysis it would use with a prisoner's claim brought pursuant to the Eighth Amendment.

> We have long analyzed claims that correction facility officials violated pretrial detainees' constitutional rights by failing to address their medical needs (including suicide prevention) under a "deliberate indifference" standard. *See, e.g., Lolli v. County of Orange*, 351 F.3d 410, 418-19 (9th Cir.2003) **(applying the "deliberate indifference" standard to a diabetic pretrial detainee's claims of failure to provide care for serious medical needs).**

*Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010)(emphasis added).

The Eighth Amendment to the Constitution prohibits "cruel and unusual punishments." To establish an Eighth Amendment violation, a detainee must allege both an objective element--that the deprivation was sufficiently serious--and a subjective element--that a jail official acted with deliberate indifference. *Young v. Quinlan*, 960 F.2d 351, 359 (3rd Cir. 1992).

1.  Medical treatment and food.

The Constitution prohibits deliberate indifference to a detainee's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jones v. Johnson*, 791 F.2d 769, 771 (9th Cir. 1986). The indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).

The government has an obligation to provide medical care for pre trial detainees, and the Constitution prohibits deliberate indifference to their serious medical needs. *Estelle*, 429 U.S. at 103 (1976). Such conduct is actionable under 42 U.S.C. § 1983. *See, e.g*., *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

To establish deliberate indifference, a detainee must show that a defendant purposefully ignored or failed to respond to the detainee's pain or possible medical need. *McGuckin*, 974

1  F.2d at 1060; *Estelle*, 429 U.S. at 104. A determination of deliberate indifference involves an

2  examination of two elements: (1) the seriousness of the medical need; and (2) the nature of

3  defendants' response to that need.  *McGuckin*, 974 F.2d at 1059. A serious medical need exists if

4  the failure to treat the condition could result in further significant injury or the unnecessary and

5  wanton infliction of pain.  *Id*.

6         In order to establish deliberate indifference there must first be a purposeful act or failure

7  to act on the part of defendant. *Id*. at 1060.  A difference of opinion between a detainee and

8  medical authorities regarding proper medical treatment does not give rise to a §1983 claim.

9  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).  Furthermore,

10  conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not

11  presume "missing facts". *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

12         Plaintiff's diabetes is a serious condition, which requires medical treatment.  Therefore,

13  the Court moves to the second part of the analysis and examines defendants' response to

14  plaintiff's serious condition.  Plaintiff has included a number of conclusory statements that one

15  or more of the defendants failed to provide adequate care for his diabetic condition (*see* ECF No.

16  31, pages 3) and attaches medical records from St. Joseph's Medical Center, which document

17  treatment that he received when he was brought from the Pierce County Jail (*Id.* at pages 5 – 22).

18  The conclusory statements regarding improper treatment are insufficient to fulfill plaintiff's

19  burden to present admissible evidence, (*see Lujan v. National Wildlife Federation*, 497 U.S. at

20  888-89), and the records from St Joseph's do not provide any evidence that defendants acted

21  with deliberate indifference.

22         To the contrary, the Court's examination of plaintiff's medical record shows that

23  defendants were trying to stabilize plaintiff's blood sugars, but that plaintiff was less than

24

Report and Recommendation 12

1  cooperative. Plaintiff repeatedly failed to allow defendants to give him insulin (ECF No. 18,

2  Exhibit F, page 2). Plaintiff repeatedly failed to allow defendants to monitor his blood sugar

3  levels (ECF No. 18, Exhibit B, page 4). Plaintiff has presented no admissible evidence to dispute

4  this showing.

5      Also, plaintiff claims that the meals provided to him were not appropriate, but he does

6  not support his claim with any admissible evidence. Furthermore, the record shows that plaintiff

7  repeatedly refused to eat the meal provided to him (ECF No. 18, Exhibit B, page 9); (ECF No. 31

8  Attachment A-14). The record shows that plaintiff claimed that he could not chew the food (ECF

9  No. 18 Exhibit G, page 6 (entry for December 19, 2011)). Defendants tried a different diet (ECF

10 No. 18, Exhibit G, page 12 (entry for January 12, 2012)). This amounts to nothing more than a

11 difference of opinion regarding what an appropriate diabetic diet is.  As discussed earlier, a

12 difference of opinion between a detainee and medical authorities regarding proper medical

13 treatment does not give rise to a §1983 claim.  *Franklin v. Oregon, State Welfare Div.*, 662 F.2d

14 1337, 1344 (9th Cir. 1981).

15     The Court also considered defendants' response to plaintiff's episodes of high or low

16 blood sugar. Whenever plaintiff went into shock or exhibited symptoms of low blood sugar,

17 defendants intervened -- swiftly, decisively, and effectively. For instance, on January 1, 2012,

18 only thirty minutes elapsed from the time that an emergency was declared, to the time plaintiff

19 left the jail for a hospital (ECF No. 18, Exhibit G, page 6). It took only three minutes to evaluate

20 plaintiff and call for a 911 response. *Id*. Further, both jail staff and the fire department treated

21 plaintiff until he was taken to the hospital.

22     When medical staff became concerned that plaintiff may be attempting to manipulate his

23 blood sugar levels, they actually ordered that plaintiff's meals and snack be eaten in the clinic

24

Report and Recommendation 13

1  where plaintiff's food intake was monitored (ECF No. 18, Exhibit G, page 6). While defendants

2  had great difficulty in stabilizing plaintiff's blood sugar, plaintiff fails to show any deliberate

3  indifference to his medical needs. If anything, the record shows that plaintiff was deliberately

4  indifferent to his own medical needs.  His motivations remain a mystery, although one might

5  surmise that his intention was to manufacture a claim, where none existed. There are several

6  references in the record of plaintiff's intention to "sue" for damages (See ECF No. 18, Exhibit B,

7  pages 9, 13). Plaintiff was regularly violent and belligerent (*Id.*) The Court recommends granting

8  defendants' motion for summary judgment on this issue.

9         2.      Use of force.

10        The use of excessive force by a law enforcement officer states a valid claim under 42

11  U.S.C. § 1983. The Court's threshold inquiry for such a claim is whether the force was applied in

12  a good faith effort to maintain or restore discipline, or applied maliciously and sadistically to

13  cause harm.  *See, e.g., Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Wilson v. Seiter*, 501 U.S.

14  294, 298-99 (1991).

15        The record shows plaintiff being loud, abusive, and belligerent on January 8, 2012, (ECF

16  No. 18, Exhibit B, page 9). Plaintiff attacked Deputy Gannon, and she defended herself. Other

17  officers arrived and attempted to restrain plaintiff and place him in a restraint chair. When

18  plaintiff continued to resist, officers used a taser to gain his compliance. *Id.*  Deputy Gannon was

19  injured during this encounter. *Id.*

20        Plaintiff fails to show that the force used was excessive or that any defendant harbored an

21  improper motivation. (ECF No. 18, Exhibit B, page 9). While this Court is not called upon to

22  decide issues of fact, plaintiff has failed to present admissible evidence to support his allegations

23  that defendant's responses were anything more than an appropriate attempts to deal with an

24

Report and Recommendation 14

1    unruly, violent, and generally noncompliant inmate.  The Court finds that defendant Gannon's

2    actions were constitutional. The Court recommends granting defendants' motion for summary

3    judgment on this claim.

4           3.      Lunch on January 5, 2012.

5           Plaintiff alleges that on January 4, 2012, Deputy Sandoval ate plaintiff's meal while at

6    the hospital. The record reflects that this incident actually occurred on January 5, 2012. The

7    progress states:

> I received a call from nursing that the patient had been doing well with relatively
> good control of blood sugars for him, when he had a pre-lunch reading of 292.
> The patients [sic] tray was to be delivered, and the patient received 6 units of
> NovoLog sliding-scale [insulin]. There was then some discrepancy with the
> patients [sic] tray, where apparently nursing staff brought in only the tray that was
> for his Police guard, and did not deliver the patients [sic] tray. When the patients
> [sic] tray arrived, then the patient refused to eat it. It is unclear to me exactly what
> happened, whether the guard received the tray that was scheduled for the patient,
> and then began to eat that and then the patient did not eat his tray because it was
> the non-diabetic tray, or whether he did not eat his tray because it was cold. The
> patient states that this is not exactly what happened he indicates that this guard
> had eaten off his tray and that he did not want to eat it.

14   (ECF No. 31, Attachment A-14). In another entry, hospital staff state:

> There was an additional episode on 01/05/2012 where the patient received his
> sliding scale coverage [insulin] as his meal was brought into the room and then
> refused to eat the meal for reasons that are still unclear to this provider. Per report
> of Nursing, there was some confusion with the patients [sic] tray and his Pierce
> County Jail guards [sic] tray. Per report of patient, this was due to a dispute with
> his guard and his guard denying him his tray. After this episode, the patients [sic]
> blood sugar dropped down to 34. He then received juice and crackers and was
> willing to eat his meal. Blood sugar resolved promptly...

20   (ECF No. 31, Attachment A-7). Plaintiff has the burden of proving that Officer Sandoval's

21   conduct caused him harm. *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407

22   (9th Cir. 1985). Plaintiff fails to make this showing. The record shows confusion over what meal

23   was to be served to what person. Even assuming plaintiff's allegations are true, plaintiff still fails

Report and Recommendation 15

1   to state a claim because he was not harmed by the incident. Once plaintiff agreed to eat, his

2   blood sugar levels were quickly restored to normal ranges. Further, plaintiff's own exhibits show

3   that it was plaintiff who refused to eat (ECF No. 31, Attachment A-14). The Court recommends

4   granting defendants' motion for summary judgment.

5           C.      Qualified immunity.

6           A public official performing a discretionary function enjoys qualified immunity in a civil

7   action for damages, provided the public official's conduct does not violate clearly established

8   federal statutory or constitutional rights of which a reasonable person would have known.

9   *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted); *see also Anderson v.*

10  *Creighton*, 483 U.S. 635, 638 (1987) ("whether an official protected by qualified immunity may

11  be held personally liable for an allegedly unlawful official action generally turns on the

12  'objective legal reasonableness' of the action assessed in light of the legal rules that were 'clearly

13  established' at the time it was taken") (*quoting Harlow*, 457 U.S. at 818, 819); *Sorrels v. McKee*,

14  290 F.3d 965, 969 (9th Cir. 2002); Qualified immunity "'provides ample protection to all but the

15  plainly incompetent or those who knowingly violate the law.'" *Burns v. Reed*, 500 U.S. 478, 495

16  (1991) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is "an

17  affirmative defense that must be pleaded by a defendant official." *Harlow*, 457 U.S. at 815

18  (*citing Gomez v. Toledo*, 446 U.S. 635 (1980)). The immunity is "*immunity from suit* rather than

19  a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)(italic in original).

20          The Supreme Court established a two-part test for determining whether an official is

21  entitled to qualified immunity. The Court must determine whether the facts, taken in the light

22  most favorable to plaintiff, demonstrate that defendants' conduct violated a federal statutory or

23  constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson v.*

24

1    *Callahan*, 129 S. Ct. 808, 818 (2009). In addition, the Court must ascertain whether the federal

2    statutory or constitutional right at issue was "clearly established" at the time of the alleged

3    violation. *Id*. at 201. Although the U.S. Supreme Court's holding in *Saucier* required that the

4    determination of a violation of a federal right be the initial inquiry, the Supreme Court later held

5    "that the *Saucier* protocol should not be regarded as mandatory in all cases, [however] we

6    continue to recognize that it is often beneficial". *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

7          For a law to be "clearly established," it must be sufficiently clear that a reasonable

8    official would understand that his or her action violates that right.  *Anderson v. Creighton*, 483

9    U.S. 635, 640 (1987).  In the absence of binding precedent, the court may look to whatever

10   decisional law is available in order to determine whether or not the law was clearly established at

11   the time the alleged acts occurred.  *Capoeman v. Reed*, 754 F.2d 1512, 1514 (9th Cir. 1985)

12   (citations omitted). "Until this threshold immunity question is resolved, discovery should not be

13   allowed." *Harlow v. Fitzgerald*, 475 U.S. 800, 818 (1982).

14         Defendants' actions do not violate clearly established law. Plaintiff, a diabetic, was given

15   a diabetic diet and medical treatment. Plaintiff alleges that he was unable to eat the meals

16   provided, (ECF No. 5), but medical staff believed plaintiff may have been manipulating his

17   blood sugar levels. Medical staff directed that plaintiff eat in the clinic so his food intake could

18   be monitored (ECF No. 18, Exhibit G, page 6). Plaintiff fails to show any violation of clearly

19   established law.

20         The Court has considered the use of force and the allegation that an officer ate a meal

21   designated for plaintiff. The use of force was objectively reasonable and in response to physical

22   aggression. Plaintiff fails to show any injury as a result of the alleged denial of food and the

23   record discloses that plaintiff refused food offered to him. Plaintiff fails to show that clearly

24

Report and Recommendation 17

1  established law has been violated. The Court recommends that qualified immunity serve as an

2  alternative reason for dismissal of plaintiff's claims.

3        The Court recommends revoking plaintiff's in forma pauperis status for the purpose of

4  appeal in this action. Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties

5  shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.

6  R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of

7  de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time

8  limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on

9  May 10, 2013, as noted in the caption.

10        Dated this 12th day of April, 2013.

11

12  J. Richard Creatura
    United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

Report and Recommendation 18